## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MELINDA JAMES,        ) | |
|        ) | |
|        **Plaintiff,**     ) | |
|        ) | |
| **v.**        ) | **Case No. 14-2480-JAR** |
|        ) | |
| **CLIENT SERVICES, INC.,**     ) | |
|        ) | |
|        **Defendant.**     ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Plaintiff Melinda James brings this suit against her former employer, Client Services, Inc. alleging it violated the Americans with Disabilities Act (the "ADA") by subjecting Plaintiff to a hostile work environment, discriminating against Plaintiff through her compensation and eventual discharge, and failing to accommodate Plaintiff.  Plaintiff also alleges Defendant invaded Plaintiff's privacy.  This case comes before the Court on Defendant's Motion to Stay Proceedings and Compel Mediation and Arbitration (Doc. 14).  The motion is fully briefed, and the Court is prepared to rule.  For the reasons set forth below, the Court grants Defendant's motion to stay proceedings and compel arbitration.

## I.      Background

On April 5, 2010, Plaintiff began working at Defendant Client Services, Inc. ("Client Services").  During Plaintiff's first day of employment, Client Services presented Plaintiff with an Employee Mediation/Arbitration Agreement (the "Agreement").[1]  The Agreement prescribes a dispute resolution procedure for potential legal claims arising between Plaintiff and Client Services.  The Agreement states that Plaintiff and Client Services "agree to first attempt to

_____

[1]Doc. 17, Ex. 1.

resolve any claim informally."[2]  "If the matter can not be resolved in an informal manner," the

Agreement provides that "the parties agree to submit the matter to mediation."[3]  Client Services

agreed to pay the reasonable cost of mediation.  If mediation fails to resolve the claims, the

Agreement provides that Client Services will pay the reasonable cost of arbitration.  The

Agreement states Plaintiff and Client Services "consent to the resolution by binding arbitration

of all claims or controversies for which a federal or state court would be authorized to grant

relief, if such claim or claims arise out of, relate to or are associated with [Plaintiff's]

employment or former employment with [Client Services]."[4]  The Agreement further provides,

"For Claims covered by this Agreement, arbitration is the parties' exclusive legal remedy.  The

arbitrator has exclusive authority to resolve any dispute relating to the applicability or

enforceability of this Agreement."[5]  Plaintiff and Client Services signed the Agreement on April

8, 2010.  Claims within the scope of the Agreement include Plaintiff's claims in this case arising

under the Americans with Disabilities Act (the "ADA") and tort law.

Plaintiff and Client Services dispute some of the circumstances surrounding the

execution of the Agreement.  Plaintiff alleges the Client Services employee who was handling

training distributed copies of the Agreement on April 5, 2010.  Plaintiff contends that the Client

Services employee stated that the Agreement must be signed that day or Plaintiff's employment

would be immediately terminated.  Plaintiff further alleges she requested to have an attorney or

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

another person review the Agreement because Plaintiff did not understand it.  According to

Plaintiff, Client Services did not permit Plaintiff to consult anyone about the Agreement.

Plaintiff could not take the Agreement off Client Services's property.  Plaintiff could not bring a

mobile phone onto Client Services's property or otherwise call during work.  Plaintiff was

permitted to call someone over her lunch break in the break room, but there was only one phone

in the break room.  The phone was busy throughout Plaintiff's lunch break.  Plaintiff states she

signed the Agreement, without understanding it, on April 6, 2010.[6]  Plaintiff also states a Client

Services supervisor forced her to change the date on the Agreement from April 6, 2010, to

April 8, 2010.  Client Services denies the bulk of these allegations.  Plaintiff went on to work at

Client Services for over three years.  Plaintiff's employment at Client Services ended on July 31,

2013.

     Plaintiff filed this case on September 23, 2014.  Three weeks later, on

November 5, 2014, Client Services discovered that Plaintiff and Client Services executed the

Agreement.   The delay in discovering the Agreement was due to changes in Client Services's

workforce.  Current managers at Client Services did not realize that the Agreement existed.

     The next week, on November 12, 2014, Client Services filed an unopposed Motion for

Leave to Amend Answer.[7]  Client Services sought leave to add an additional defense barring

Plaintiff's claims to the extent that they are subject to binding arbitration pursuant to the

Agreement.  The magistrate judge granted Client Services's motion.  Client Services filed an

---

[6]Plaintiff's recollection appears to be inconsistent.  Plaintiff states Client Services forced her to sign the Agreement on the same day she began work, April 5, 2010.  Plaintiff then states she signed the Agreement the next day, April 6, 2010.

[7]Doc. 10.

Amended Answer that added the additional defense of Plaintiff's claims being subject to binding arbitration.  In December 2014, before the parties' Rule 26(f) planning conference or Rule 16 scheduling conference, Client Services filed a Motion to Stay Proceedings and Compel Mediation and Arbitration (Doc. 14).  Client Services also filed a Motion to Postpone Deadlines pending a ruling on the Motion to Stay Proceedings and Compel Mediation and Arbitration.  Plaintiff filed a Memorandum in Opposition (Doc. 21).  The magistrate judge extended the discovery planning deadlines in this case pending a ruling on the Motion to Stay Proceedings and Compel Mediation and Arbitration.

## II.     Governing Law

### A.     Overview

While the interpretation of contracts—including arbitration agreements—is usually a matter of state law, the Federal Arbitration Act (the "FAA") imposes certain rules beyond those normally found in state contract law.[8]  The FAA applies to written arbitration agreements in any "contract evidencing a transaction involving commerce."[9]  "The FAA provides that contractual agreements to arbitrate disputes 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' "[10]  Arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud,

---

[8]*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 129 S. Ct. 1896, 1901–02 (2009); *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[9]9 U.S.C. § 2.

[10]*Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 770–71 (10th Cir. 2010) (quoting 9 U.S.C. § 2).

4

duress, or unconscionability.' "[11]

Congress designed the FAA " 'to overrule the judiciary's long standing refusal to enforce agreements to arbitrate' "[12] and, by enacting the FAA, created "a liberal federal policy favoring arbitration agreements."[13]  Section 3 of the FAA impels "courts to stay litigation on matters that the parties have agreed to arbitrate . . . ."[14]  Section 4 of the FAA impels "a federal district court to compel arbitration when [the court] would have jurisdiction over a suit on the underlying dispute."[15]

### B.      Enforcement of Agreements to Arbitrate Arbitrability

"Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide."[16]  The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[17]  Courts use presumptions to determine whether disputes under a contract are subject to arbitration.[18]  When a contract contains an arbitration provision, "a presumption of

---

[11]*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

[12]*Volt Info. Scis., Inc.*, 489 U.S. at 478 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985)).

[13]*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[14]*Hill*, 603 F.3d at 771 (citing 9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–27).

[15]*Hill*, 603 F.3d at 771 (citing 9 U.S.C. § 4; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–27).

[16]*BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014).

[17]*Rent-A-Center, West, Inc.*, 561 U.S. at 68–69 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)).

[18]*BG Grp.*, 134 S. Ct. at 1206.

arbitrability arises," particularly if the clause is broad.[19]  However, "[t]he presumption favoring arbitration does not apply when the dispute itself concerns arbitration."[20]  "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[21]  Importantly, the "clear and unmistakable requirement . . . pertains to the parties' manifestation of intent, not the agreement's validity."[22]  Accordingly, the Court begins "its analysis by asking whether the parties did or said anything to rebut the presumption that questions about the arbitrability of an arbitration dispute will be resolved by the courts."[23]  The Court does "not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[24]

"On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration."[25]  One such "particular procedural precondition" is the claim that a party waived its right to arbitration.[26]

[19]*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (citations omitted).

[20]*Commc'n Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1303 (10th Cir. 2012) (citing *Peabody Holding Co. v. United Mine Workers*, 665 F.3d 96, 102 (4th Cir. 2012)).

[21]*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

[22]*Rent-A-Center*, 561 U.S. at 69 n.1.

[23]*Commc'n Workers of Am.*, 693 F.3d at 1303.

[24]*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (quoting *AT & T Techs.*, 475 U.S. at 649).

[25]*BG Grp.*, 134 S. Ct. at 1207 (citing *Howsam*, 537 U.S. at 86); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 558–59 (1964) ("Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 690 (10th Cir. 1985); *City of Lenexa v. C.L. Fairley Const. Co.*, 805 P.2d 507, 510 (Kan. Ct. App. 1991).

[26]*BG Grp.*, 134 S. Ct. at 1207 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25).

6

If the parties agreed to arbitrate arbitrability, the Court must determine whether a party specifically challenges the validity of the agreement to arbitrate arbitrability.[27]  The validity of that written agreement "is governed by § 2's provision that [the agreement] shall be valid 'save upon such grounds as exist at law or equity for the revocation of any contract.' "[28]  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."[29]  However, if a party specifically challenges the validity of an agreement to arbitrate arbitrability, "the federal court must consider the challenge before ordering compliance with that agreement under § 4."[30]  "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."[31]  Courts "require the basis of [a] challenge to be directed specifically to the agreement to arbitrate before the court will intervene," even if the "agreement to arbitrate" is an agreement to arbitrate arbitrability.[32]

"Summary-judgment-like motions practice may be a permissible and expedient way to resolve arbitrability questions when it's clear no material disputes of fact exist and only legal

---

[27]*Rent-A-Center*, 561 U.S. at 69–71.

[28]*Id.* at 69 n.1 (quoting 9 U.S.C. § 2).

[29]*Id.* at 70.

[30]*Id.* at 70–71.

[31]*Id.* at 70.

[32]*Id.* at 71.  *See also Seahorn v. JC Penney Corp., Inc.*, No. 12-CV-2617-CM, 2013 WL 452793 (D. Kan. Feb. 6, 2013) (applying *Rent-A-Center* and compelling arbitration); *Chen v. Dillard's Inc.*, No. 12-CV-2366-CM, 2012 WL 4127958 (D. Kan. Sept. 19, 2012) (same).

questions remain."[33]  The Court will "decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration."[34]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[35]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[36]  An issue of fact is "genuine" if " 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.' "[37]

## III.  Discussion

### A.  An Agreement to Arbitrate Disputes

Plaintiff argues "The circumstances under which the [Agreement] was presented to Plaintiff, combined with her stated lack of understanding as to its meaning, demonstrate that the purported agreement is void, *ab initio*, for lack of an objective manifestation by the Plaintiff that she intended to be bound by the Agreement and understood its terms."[38]

"[B]efore the [FAA's] heavy hand in favor of arbitration swings into play, the parties

---

[33]*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 984 (10th Cir. 2014).

[34]*Id.* at 978 (citation omitted); *see also Patrick Higgins & Co. v. Brooke Corp.*, Case No. 06-4111-JAR, 2007 WL 2317123, at *1 n.2 (D. Kan. Aug. 9, 2007) (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1116 (D. Kan. 2003) (stating that in the context of motions to compel arbitration, courts should apply a standard similar to that applicable in a summary judgment motion)).

[35]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[36]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[37]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[38]Doc. 20 at 4–5.

themselves must agree to have their disputes arbitrated."[39]  "While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs."[40]  Client Services argues all disputes about the enforceability of the Agreement must be heard by an arbitrator; however, Client Services's argument begs the question.  The Court may only compel arbitration of arbitrability if the parties *agreed* to arbitrate arbitrability.  Therefore, the Court first considers whether the parties agreed to arbitrate their disputes.

The parties agree that Kansas law determines the question of contract formation.  An enforceable contract must contain a "meeting of the minds on all essential terms and the parties must intend to be bound."[41]  "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."[42]  Whether a contract was formed is a question of fact.[43]

In determining whether a contract was formed, the test is objective and not subjective.[44]

---

[39]*Howard*, 748 F.3d at 978.

[40]*Id.* (quoting *AT & T Mobility LLC v. Concepcion*, ⸻ U.S. ⸻, 131 S. Ct. 1740, 1745 (2011)).  *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006).

[41]*U.S. ex rel. Quality Trust, Inc. v. Cajun Contractors, Inc.*, No. 04-4157-SAC, 2008 WL 410121, at *6 (D. Kan. Feb. 13, 2008).

[42]*Steele v. Harrison*, 552 P.2d 957, 962 (Kan. 1976).

[43]*Reznik v. McKee*, 534 P.2d 243, 254 (Kan. 1975).

[44]*Southwest & Assocs., Inc. v. Steven Enters.*, LLC, 88 P.3d 1246, 1249 (Kan. Ct. App. 2004).

The focus is on the parties' "outward expression of assent," and not necessarily their "actual or real intention."[45]  The Agreement between the parties, which represents the uncontroverted facts in this matter, establishes the outward expression of the parties' intent as to whether the parties reached an arbitration agreement in this case.  The parties, by signing this Agreement, agreed to arbitrate claims against one another, including claims under the ADA and tort claims.  The parties also agreed to arbitrate "any dispute relating to the applicability or enforceability of th[e] Agreement."[46]

Construing the facts in the light most favorable to the Plaintiff, the evidence shows that the parties agreed to a contract, the Agreement.  Plaintiff contends she did not understand the Agreement or wish to sign it.  Plaintiff also claims she only signed the document because she wished to remain employed at Client Services, and Client Services made Plaintiff's execution of the Agreement a condition of her employment.  Broadly construed, Plaintiff claims that she was under economic duress, the Agreement was unconscionable, and there was no meeting of the minds because Plaintiff did not understand the Agreement.  Client Services denies these allegations.  While Plaintiff's claims may be relevant in determining the enforceability or validity of the Agreement as a whole, Plaintiff's claims have no bearing in determining whether a contract was formed.  The law is clear that undisclosed intentions are not to be considered when determining the parties' intent.[47]  The objective evidence—the signed Agreement—establishes as a matter of law that a contract to arbitrate arbitrability was formed

---

[45]*Id.* (internal quotations omitted).

[46]Doc. 17, Ex. 1.

[47]*O'Neill*, 317 P.3d at 145 (citing *First Nat'l Bank & Trust Co. v. Lygrisse*, 647 P.2d 1268 (Kan. 1982); *Kansas ex rel. v. Rosenbaum Grain Co.*, 222 P. 80 (Kan. 1924)).

between Plaintiff and Client Services.

### B.      Specifically challenging an agreement to arbitrate arbitrability

In *Rent-A-Center, West, Inc. v. Jackson*,[48] the Supreme Court held that unless a party

specifically challenges the validity of an agreement to arbitrate arbitrability, a court shall enforce

the agreement and compel arbitration.[49]  The facts in *Rent-A-Center* closely mirror the facts in

this case.  In *Rent-A-Center*, the plaintiff filed an employment-discrimination suit against his

former employer.[50]  The defendant filed a motion under the FAA to dismiss or stay the

proceedings and to compel arbitration.[51]  The defendant argued an arbitration agreement, which

the plaintiff signed as a condition to his employment, precluded the plaintiff from pursuing his

claims in court.[52]  The arbitration agreement "provided for arbitration of all 'past, present or

future' disputes arising out of [the plaintiff's] employment with the defendant."[53]  The arbitration

agreement "also provided that '[t]he Arbitrator, and not any federal, state, or local court or

agency, shall have exclusive authority to resolve any dispute relating to the interpretation,

applicability, enforceability or formation of this Agreement including, but not limited to any

claim that all or any part of this Agreement is void or voidable.' "[54]  The plaintiff opposed the

motion to compel arbitration on the ground that the arbitration agreement was unenforceable

---

[48]561 U.S. 63 (2010).

[49]*Rent-A-Center*, 561 U.S. at 72.

[50]*Id.* at 65.

[51]*Id.*

[52]*Id.*

[53]*Id.* at 65–66.

[54]*Id.* at 66.

because it was unconscionable under applicable state law.[55]  The defendant responded that the plaintiff's argument about enforceability was not properly before the court.[56]  The defendant contended the arbitrator had "exclusive authority to resolve any dispute about the enforceability of the [a]greement."[57]

The district court granted the motion to compel arbitration.[58]  The district court held that the arbitration agreement provided exclusive authority to the arbitrator to resolve disputes about the arbitration agreement's enforceability.[59]  Pointing to the fact that the plaintiff challenged the enforceability of the arbitration agreement as a whole, the district court held the arbitrator had exclusive authority to resolve the dispute.[60]  The Ninth Circuit reversed in-part, holding that where " 'a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court.' "[61]  The Supreme Court reversed the Ninth Circuit.[62]  The Supreme Court held that where the parties clearly agree to arbitrate a gateway issue within an arbitration agreement (*e.g.*, the enforceability of the arbitration agreement), a party may not avoid arbitration of the gateway

---

[55]*Id.*

[56]*Id.*

[57]*Id.*

[58]*Id.*

[59]*Id.*

[60]*Id.* (citing *Buckeye Check Cashing*, 546 U.S. at 444–45).

[61]*Id.* at 66–67 (internal quotation marks omitted) (citation omitted).

[62]*Id.* at 76.

issue by challenging the validity of the arbitration agreement, generally.[63]

Plaintiff states she "disputes not just those terms which would compel her to submit her claims to arbitration, but all terms of the purported agreement, and specifically challenges the validity and enforceability of the portion of Paragraph 18 stating '[t]he arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement.' "[64]   Analyzing Plaintiff's arguments, it is clear that Plaintiff objects to the Agreement as a whole, similar to the *Rent-A-Center* plaintiff.  The *Rent-A-Center* plaintiff argued that the entire arbitration agreement was unconscionable.  Plaintiff argues that the entire arbitration agreement is void because Plaintiff was under duress, the Agreement was unconscionable, and there was no meeting of the minds.  Like the *Rent-A-Center* plaintiff's arguments, Plaintiff's arguments are general attacks on the entire contract that must be heard by the arbitrator.[65]  A party who agrees to arbitrate a gateway issue may not avoid arbitration of that gateway issue by challenging the entire arbitration agreement.

The only arguments Plaintiff specifically lodges against the agreement to arbitrate arbitrability are easily disposed of.  Plaintiff states, "[Client Services's] argument not only improperly presupposes the existence and enforceability of the Agreement, but reverses an important legal presumption."[66]  The Court has determined the parties entered into the Agreement.  The fact the agreement to arbitrate arbitrability "reverses an important legal

---

[63]*Id.* at 71.

[64]Doc. 20 at 4–5.

[65]*See Rent-A-Center*, 561 U.S. at 71 (citing *Buckeye Check Cashing*, 546 U.S. at 445; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967)).

[66]Doc. 20 at 4–5.

presumption"—that courts decide arbitrability disputes—does nothing to assist Plaintiff.  The Supreme Court has "recognized that parties can agree to arbitrate 'gateway questions of arbitrability . . . .' "[67]  The parties in this case clearly and unmistakably agreed to arbitrate gateway questions of arbitrability.

Plaintiff also argues, "The circumstances under which Plaintiff placed her signature on the purported agreement prevent the conclusion that there exists a 'clear and unmistakable' agreement to delegate questions of arbitrability to an arbitrator."[68]  In *First Options of Chicago, Inc. v. Kaplan*,[69] the Supreme Court held "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."[70] By focusing on the circumstances surrounding the Agreement's execution, Plaintiff "mistakes the subject of the *First Options* 'clear and unmistakable' requirement."[71]  The "clear and unmistakable requirement . . . pertains to the parties' manifestation of intent, not the agreement's validity."[72]  To determine the parties' manifestation of intent, the Court analyzes "whether the parties did or said anything to rebut the presumption that questions about the arbitrability of an arbitration dispute will be resolved by the courts."[73]  Plaintiff and Client Services clearly and unmistakably manifested their intent for an arbitrator to decide questions of arbitrability when

---

[67]*Rent-A-Center*, 561 U.S. at 69.

[68]Doc. 20 at 4–5.

[69]514 U.S. 938.

[70]*First Options of Chicago*, 514 U.S. at 943 (quoting *AT & T Techs.*, 475 U.S. at 649).

[71]*Rent-A-Center*, 561 U.S. at 69 n.1.

[72]*Id.*

[73]*Commc'n Workers of Am.*, 693 F.3d at 1303.

14

they signed a contract, the Agreement, to that effect.

In sum, Plaintiff's arguments regarding duress, unconscionability, and a lack of meeting of the minds do not specifically challenge the validity of the agreement to arbitrate arbitrability. Plaintiff disputes "all terms of the purported agreement" on these grounds.[74]  Plaintiff's challenges are to the contract as a whole.  They are not specific to the agreement to arbitrate arbitrability.[75]  Accordingly, under federal arbitration law, the Court must treat the agreement to arbitrate arbitrability as valid.[76]  Any challenge to the validity or enforceability of the Agreement as a whole is for the arbitrator.

### C.    Waiver

Plaintiff also argues Client Services waived its right, if any, to compel arbitration.

Plaintiff states Client Services's "delay in raising any arbitration issue is inconsistent with an intention to arbitrate."[77]  Plaintiff argues "[Client Services's] actions manifest a tacit intent to address Plaintiff's claims through the forum of the federal court, not through private arbitration."[78]  Plaintiff states she "engaged in substantial preparation for discovery, including preparation of initial disclosures, and further scheduling based on [Client Services's] decision to answer the Complaint and assert affirmative defenses rather than file a motion under the Federal Arbitration Act or Federal Rule of Procedure 12."[79]  Plaintiff also argues that Client Services's

---

[74]Doc. 20 at 4–5.

[75]*See Rent-A-Center*, 561 U.S. at 70–71.

[76]*Id.* at 72.

[77]Doc. 20 at 7.

[78]*Id.*

[79]*Id.*

delay caused prejudice to Plaintiff, who was prepared to proceed with discovery.  Plaintiff further states that Client Services's delay in moving to compel arbitration weakens " 'the combined efficiency of the public and private dispute-resolution systems.' "[80]

The agreement to arbitrate arbitrability—paragraph 18 of the agreement—is a distinct "agreement to arbitrate" within the meaning of section 2 of the FAA.[81]  The Court must enforce that agreement according to its terms, unless Plaintiff specifically challenges its validity.[82]  As discussed above, Plaintiff fails to specifically challenge the validity of the agreement to arbitrate arbitrability.  Plaintiff alleges arbitration, on the whole, was waived.  Plaintiff does not allege Client Services delayed in seeking arbitration of arbitrability.  Plaintiff's general waiver argument is either in the nature of an arbitrability challenge—a challenge that must be heard by the arbitrator pursuant to the Agreement—or, pursuant to the Supreme Court's statements in *Moses H. Cone Memorial Hospital*, *Howsam*, and *BG Group*, it does not even rise to the level of an arbitrability challenge.[83]

The Court need not determine whether Client Services waived its right to enforce the Agreement.  If the waiver argument is an arbitrability dispute, the Court must compel arbitration in accordance with the Agreement.  If the waiver argument does not rise to the level of an arbitrability dispute, the Court must also compel arbitration.  The Supreme Court has held that in at least some instances, a waiver challenge is a dispute about a "particular procedural

---

[80]*Id.* at 9–10 (quoting *Hill*, 603 F.3d at 774).

[81]*Rent-A-Center*, 561 F.3d at 70–71.

[82]*Id.*

[83]*BG Grp.*, 134 S. Ct. at 1206–07 (citations omitted).

precondition," not arbitrability.[84]  If the waiver challenge is a dispute over a particular procedural precondition, a presumption exists that the challenge should be heard by the arbitrator.[85] Plaintiff failed to rebut that presumption.  Therefore, regardless of the Court's determination as to whether the waiver challenge is an arbitrability dispute, Plaintiff's waiver challenge should be heard by the arbitrator.

Furthermore, the Court takes no position on Client Services's argument that Plaintiff must mediate her claims before proceeding to arbitration.  A presumption exists that an arbitrator should decide any dispute over a "particular procedural precondition" to arbitration, such as whether a party complied with the dispute resolution scheme contained in an arbitration agreement.[86]  Client Services did nothing to rebut that presumption.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Stay Proceedings and Compel Mediation and Arbitration (Doc. 14) is **GRANTED**.

**IT IS FURTHER ORDERED BY THE COURT** that the parties shall file a status report notifying the Court of the case's status when the matter is resolved or **November 16, 2015**, whichever is earlier.

**IT IS SO ORDERED.**

Dated: June 10, 2015

           S/ Julie A. Robinson        
          JULIE A. ROBINSON
          UNITED STATES DISTRICT JUDGE

---

[84]*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25.

[85]*BG Grp.*, 134 S. Ct. at 1207 (citations omitted).

[86]*Id.*